**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**WHITE PLAINS DIVISION**

| | |
|---|---|
| IN RE USAA DATA SECURITY LITIGATION | No. 7:21-cv-05813-VB |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF VINCENT DOLAN'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   CLASS NOTICE ............................................................................................... 2

III.  ARGUMENT .................................................................................................... 4

    A.   Legal Standards for Final Approval................................................................ 4

    B.   The Settlement Is Procedurally Fair ............................................................... 5

        1.   Plaintiff Has Adequately Represented the Class ....................................... 5

        2.   Class Counsel Have Adequately Represented the Class ........................... 7

        3.   The Proposed Settlement Was Negotiated at Arm's Length..................... 7

    C.   The Proposed Settlement Is Substantively Fair .............................................. 9

        1.   The Costs, Risks, and Delay of Trial and Appeal ..................................... 10

        2.   The Effectiveness of the Distribution Plan............................................... 14

        3.   The Proposed Attorneys' Fees Indicate that the Class will Receive Substantial Relief from the Settlement ................................................................................ 15

        4.   There Are No Further Agreements to be Identified .................................. 17

        5.   The Settlement Treats Class Members Equitably ..................................... 18

    D.   The Remaining *Grinnell* Factors Favor Final Approval................................ 18

        1.   The Reaction of the Settlement Class to the Settlement........................... 19

        2.   The Stage of the Proceedings ................................................................... 21

        3.   The Ability of USAA to Withstand Greater Judgment ............................ 21

        4.   The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation ....................................................................... 22

IV.   THE PROPOSED SETTLEMENT CLASS SATISFIES ALL REQUIREMENTS OF RULE 23 AND SHOULD BE FINALLY CERTIFIED ............................................. 24

V.    THE NOTICE PLAN SATISFIED DUE PROCESS ....................................... 25

VI.   CONCLUSION................................................................................................. 26

## TABLE OF AUTHORITIES

**Cases**

*Balestra v. ATBCOIN LLC*,
2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) ............................................................................ 12

*Bano v. Union Carbide Corp.*,
273 F.3d 120 (2d Cir. 2001) ................................................................................................... 4

*Barletti v. Connexin Software, Inc.*,
2024 U.S. Dist. LEXIS 43851 (E.D. Pa. Mar. 13, 2024)...................................................... 8, 16

*Beckman v. KeyBank, N.A.*,
293 F.R.D. 467 (S.D.N.Y. 2013) ........................................................................................... 4

*Belton v. GE Cap. Consumer Lending, Inc.*,
2022 WL 407404 (S.D.N.Y. Feb. 10, 2022).......................................................................... 8

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) .......................................................................5, 18-19, 22, 23

*Fresco v. Auto. Directions Inc.*,
2009 U.S. Dist. LEXIS 125233 (S.D. Fla. Jan. 16, 2009) ...................................................... 23

*Fresco v. R.L. Polk & Co.*,
2009 U.S. Dist. LEXIS 154273 (S.D. Fla. Jun. 15, 2009)...................................................... 23

*Garey v. Farrin*,
35 F.4th 917 (4th Cir. 2022) ................................................................................................. 13

*Gaston v. LexisNexis Risk Solutions*,
2021 WL 2077812 (W.D.N.C. May 24, 2021)........................................................................ 23

*Green-Cooper v. Brinker Int'l, Inc.*,
73 F.4th 883 (11th Cir. 2023) ............................................................................................... 12

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*,
2015 WL 5093503 (E.D.N.Y. July 10, 2015) ......................................................................... 6

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................................. 21

*In re Bear Stearns Cos.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................................... 23

*In re Currency Conversion Fee Antitrust Litig.*,
263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd sub nom. Priceline.com, Inc. v. Silberman*,
405 F. App'x 532 (2d Cir. 2010) ........................................................................................ 7

*In re Currency Conversion Fee Antitrust Litig.*,
264 F.R.D. 100 (S.D.N.Y. 2010) ........................................................................................ 6

*In re Experian Data Breach Litig.*,
2019 U.S. Dist. LEXIS 81243 (C.D. Cal. May 10, 2019) ................................................. 16

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
343 F. Supp. 3d 394 (S.D.N.Y. 2018) ............................................................................... 12

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 439 (S.D.N.Y. 2004) ................................................................... 4, 21, 22, 23

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................ 8, 10, 12, 19

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
2022 WL 2063864 (S.D.N.Y. June 8, 2022) ..................................................................... 16

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022),
*vacated and remanded sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), *and
reinstated by In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md.
2023) ................................................................................................................................. 12

*In re MOVEit Customer Data Security Breach Litigation*,
1:23-md-03083-ADB, ECF No. 1409 (D. Mass. Mar. 4, 2025) ........................................ 16

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ....................................................................................... 22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ......................................................................................... 9

*In re Onix Grp., LLC Data Breach Litig.*,
2024 U.S. Dist. LEXIS 225686 (E.D. Pa. Dec. 13, 2024) ................................................ 16

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1977), *aff'd* 117 F.3d 721 (2d Cir. 1997) ................................. 9

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
827 F.3d 223 (2d Cir. 2016) ................................................................................................. 5

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................ *passim*

*In re Planned Parenthood L.A. Data Incident Litig.*,
    2024 Cal. Super. LEXIS 2 (Cal. Super. L.A. Cnty. Jan. 2, 2024) ........................... 23

*In re Sonic Corp. Customer Data Breach Litig.*,
    2020 WL 6701992 (N.D. Ohio Nov. 13, 2020) ...................................................... 12

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ....................................................................... 11

*In re USAA Data Sec. Litig.*,
    621 F. Supp. 3d 454 (S.D.N.Y. 2022) .................................................................... 13

*In re Wawa, Inc. Data Sec. Litig.*,
    2023 WL 6690705 (E.D. Pa. Oct. 12, 2023) .......................................................... 11

*Jenkins v. Nat'l Grid USA Serv. Co., Inc.*,
    2022 WL 2301668 (E.D.N.Y. June 24, 2022) ........................................................ 14

*Maley v. Del Glob. Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................................... 19

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................. *passim*

*Moses v. New York Times Co.*,
    79 F.4th 235 (2d Cir. 2023) .............................................................................. *passim*

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ............................................................................................... 25

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) .................................................................................. 22

*Rand v. The Travelers Indemnity Company*,
    No. 7:21-cv-10744-VB-VR, ECF No. 174 (S.D.N.Y. Feb. 5, 2025) ................................. *passim*

*Reyes v. Summit Health Mgmt., LLC*,
    2024 WL 472841 (S.D.N.Y. Feb. 6, 2024).................................................... 5, 8, 14

*Roberts v. Source for Pub. Data LP*,
    2010 WL 4008347 (W.D. Mo. Oct. 12, 2010) ....................................................... 23

iv

*Sakiko Fujiwara v. Sushi Yasuda Ltd.*,
    58 F. Supp. 3d 424 (S.D.N.Y. 2014) .......................................................................... 20

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ..................................................... 7, 10

*Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*,
    2023 WL 3749996 (S.D.N.Y. June 1, 2023) ............................................................. 18

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ............................................................................... *passim*

*Whitaker v. Appriss, Inc.*,
    2014 U.S. Dist. LEXIS 127213 (N.D. Ind. Sept. 11, 2014) ..................................... 13

*Williams v. Bluestem Brands, Inc.*,
    2019 U.S. Dist. LEXIS 56655 (M.D. Fla. Apr. 2, 2019) ............................................ 8

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ..................................................................... 20

## Statutes

18 U.S.C. § 2724 ............................................................................................................ 13

## Rules

FED. R. CIV. P. 23 ..................................................................................................... *passim*

## I.   INTRODUCTION[1]

Pursuant to the order preliminarily approving the class action settlement (the "Settlement") in this Action[2] (ECF No. 89, the "Preliminary Approval Order"), and as amended on January 13, 2025 (ECF No. 92, the "Amended Preliminary Approval Order"), and in accordance with Rule 23 of the Federal Rules of Civil Procedure, Plaintiff Vincent Dolan ("Plaintiff" or "Settlement Class Representative") respectfully submits this memorandum of law in support of his motion seeking final approval of the Settlement with Defendant United Services Automobile Association ("Defendant" or "USAA") as well as final certification of the Settlement Class.[3]

The Settlement achieved here provides a $3.25 million non-reversionary common fund to approximately 22,646 Settlement Class Members whose information was potentially exposed as a result of a third-party attack involving USAA's online insurance quotation system on or around May 6, 2021 (the "Data Incident"). As discussed in Plaintiff's preliminary approval papers, the guaranteed cash recovery, balanced against the risks presented in the Action, supports the fairness, adequacy, and reasonableness of the Settlement, thus warranting final approval. *See* Preliminary

---

[1]   The Joint Declaration of Thomas J. McKenna, Christian Levis, and Nicholas A. Colella in Support of Plaintiff Vincent Dolan's (1) Motion for Final Approval of Class Action Settlement and (2) Motion for Attorneys' Fees, Expenses, and Service Award ("Final App. Decl."), filed herewith, and the Joint Declaration of Thomas J. McKenna, Christian Levis, and Nicholas A. Colella in Support of Plaintiff Vincent Dolan's Motion for Preliminary Approval of Class Action Settlement (ECF No. 82, "Prelim. App. Decl."), describes in detail the procedural and factual history of this Action.

[2]   Unless otherwise defined, capitalized terms have the same meaning as in the Stipulation and Agreement of Class Action Settlement ("Settlement Agreement" or "SA"), ECF No. 82-1. Unless otherwise noted, ECF citations are to the docket in this Action and internal citations and quotation marks are omitted.

[3]   USAA does not oppose the relief sought by this Motion for Final Approval and agrees that the Court should grant final approval.

Approval Brief, ECF No. 81. at 3-4.[4] Furthermore, supporting its reasonableness, this Settlement is similar in structure to the DPPA class action settlement this Court recently granted final approval to in *Rand v. The Travelers Indemnity Company*, No. 7:21-cv-10744-VB-VR, ECF No. 174 (Final Approval Order) (S.D.N.Y. Feb. 5, 2025) ("*Travelers*").

Since this Court granted preliminary approval of the Settlement, the Settlement Administrator commenced notice to the Settlement Class, and Plaintiff is pleased to report that, to date, there are no objections to the Settlement, Class Counsel's request for attorneys' fees and expenses, or the request for a service award, and one (1) Class Member has thus far opted out.[5] As discussed herein, this positive reaction to the Settlement further highlights that the Settlement is in the best interests of the Class. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement, finally certify the Settlement Class, and enter the Final Approval Order and Judgment dismissing the claims against Defendant with prejudice on the merits, in the form of the proposed order filed herewith.

## II.    CLASS NOTICE

Pursuant to the Preliminary Approval Order and Amended Preliminary Approval Order, the Settlement Administrator, Angeion Group, LLC ("Angeion"), commenced the notice plan as contemplated by the Settlement Agreement. On February 6, 2025, and following receipt of the Class List from USAA, Angeion mailed a copy of the Short Form Notice and Settlement Payment Election Form ("Notices") to all Class Members on the Class List via First-Class U.S. Mail. Declaration of Jazminee Shumway Re: Implementation of Notice Plan, Administration Costs and Estimated Settlement Payment Amount ("Angeion Decl.") ¶ 6. Notices that were returned by

---

[4]    Plaintiff incorporates by reference the arguments presented in his Motion for Preliminary Approval of Class Action Settlement. ECF Nos. 80-85.

[5]    The Objection and Exclusion Deadlines are April 7, 2025.

USPS as undeliverable with a forwarding address were re-mailed to that forwarding address. *Id*. ¶ 8. Notices that were returned by USPS without a forwarding address were subjected to an address verification search ("skip trace") by Angeion in an attempt to locate an updated address. *Id.* As a result of the above-described efforts, of the 3,446 Notices returned as undeliverable by USPS, 2,880 were re-mailed to updated addresses by Angeion. *Id.*

Also on February 6, 2025, Angeion also caused the Settlement Website to go live at https://www.usaadatasettlement.com/ which contained: (i) the Settlement Agreement (and all its exhibits); (ii) the Long Form Notice; (iii) the toll-free phone number applicable to the Settlement; (iv) the motion for preliminary approval of settlement and the Preliminary Approval Order and Amended Preliminary Approval Order; (v) the dates and locations of relevant Court proceedings, including the Final Approval Hearing; and (vi) other relevant Court filings pertaining to the Action and resulting in the Settlement. *Id.* ¶ 9. As of March 24, 2025, the Settlement Website has received 158,526 website visits by 130,058 unique users totaling 264,802 pageviews. *Id*. ¶ 10. On February 6, 2025, Angeion also established a toll-free phone line for callers to obtain information regarding the Settlement and also request hard copies of the Long Form Notice, Short Form Notice, and Settlement Payment Election Form. *Id.* ¶ 11. As of March 24, 2025, Angeion has received 3,570 calls totaling 15,257 minutes. *Id.* ¶ 12. Angeion also established a settlement mailbox for Class Members to submit hard copy Settlement Payment Election Forms and for case correspondence. While the Settlement Payment Election Deadline[6] is not until April 7, 2025, Angeion reports receiving 2,144 Settlement Payment Election Forms to date. *Id.* ¶ 13.

---

[6]    To reiterate, this is not a traditional "claims deadline," since under the Settlement all Class Members are entitled to receive payment, not just those who submit the Settlement Payment Election form, rather it is a deadline to enable Class Members to select how they would like to receive their payment.

3

To date, following this robust notice, there have been no objections and only one (1) request for exclusion. Final App. Decl. ¶ 7; Angeion Decl. ¶¶ 14-15. The Objection and Exclusion Deadlines are also set for April 7, 2025. Accordingly, pursuant to Paragraph 1 of the Amended Preliminary Approval Order, Class Counsel will file a Reply brief on or before May 7, 2025, to address any objections, or lack thereof.

### III.    ARGUMENT

#### A. Legal Standards for Final Approval

Public policy favors the resolution of class actions through settlement. *See, e.g.*, *Bano v. Union Carbide Corp.*, 273 F.3d 120, 129-30 (2d Cir. 2001); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 439, 455 (S.D.N.Y. 2004). "[C]ourts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 474-75 (S.D.N.Y. 2013). In service of "the strong judicial policy in favor of settlements, particularly in the class action context," *Wal-Mart*, 396 F.3d at 116-17, a court may approve a class action settlement upon a showing that the settlement is "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).

"A district court may approve a settlement proposal that binds class members only 'after a hearing and on finding that it is fair, reasonable, and adequate.'" *Moses v. New York Times Co.*, 79 F.4th 235, 242 (2d Cir. 2023) (quoting FED. R. CIV. P. 23(e)(2)). A settlement is fair, reasonable, and adequate and should be approved if the settlement is shown to be both procedurally and substantively fair. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019).  Rule 23(e) sets out the factors that guide the Court's analysis.

4

"The first two factors are procedural in nature and the latter two guide the substantive review of a proposed settlement." *Moses*, 79 F.4th at 243.[7] The courts in this Circuit also consider the complementary factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) ("*Grinnell*") to assess the "substantive fairness of a settlement." *Moses*, 79 F.4th at 243 Applying these factors to the Settlement here demonstrates final approval of the Settlement is warranted.

### B. The Settlement Is Procedurally Fair

To approve a class action settlement, the first two Rule 23(e)(2) factors require the Court to find that "the class representatives and class counsel have adequately represented the class" and that "the proposal was negotiated at arm's length[.]" FED. R. CIV. P. 23(e)(2)(A)-(B). Where a settlement is the product of "arm's length negotiations" following "extensive pre-negotiation discovery … and then … months of discovery" conducted by "experienced counsel," it "counsels in favor of approving the settlement." *Reyes v. Summit Health Mgmt., LLC*, 2024 WL 472841, at *3 (S.D.N.Y. Feb. 6, 2024).

### 1. Plaintiff Has Adequately Represented the Class

Rule 23(e)(2)(A) requires that the "interests … served by the Settlement [are] compatible with" those of the class members. *Wal-Mart*, 396 F.3d at 110; *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 232 (2d Cir. 2016) (the focus for adequacy is whether the interests of the proposed settlement class are "sufficiently cohesive to warrant adjudication"). This factor is satisfied where, like here, the class representative's interests

---

[7] Furthermore, the Second Circuit also clarified in 2023 in *Moses* that a district court, when reviewing the substantive fairness of a proposed settlement, must review both the terms of the settlement and any proposed fee award in tandem as it would be an error to review the appropriateness of a fee award separately from consideration of the fairness, reasonableness, and adequacy of the settlement. *See Moses*, 79 F.4th at 246 ("the [district] court erred when it evaluated the proposed fees 'separately' from the settlement's fairness.").

are aligned with, and not antagonistic to, those of the class. *See In re Currency Conversion Fee Antitrust Litig.*, 264 F.R.D. 100, 111-12 (S.D.N.Y. 2010); *see also Wal-Mart*, 396 F.3d at 106-07 ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

Here, this factor is undoubtedly satisfied. Indeed, Plaintiff suffered the same alleged injury as other Class Members in that his Personal Information was potentially exposed in the same Data Incident as other Settlement Class Members, subjecting all Settlement Class Members to the same risk of financial fraud and identity theft. In fact, here, Plaintiff *did* suffer from identity theft in connection with the Data Incident as his Personal Information was used to file for a fraudulent unemployment claim in his name. Amend. Compl., ECF No. 34 at ¶¶ 10, 21, 23, 67, 109. As such, USAA's alleged failure to implement reasonable data security measures impacted not just Plaintiff's privacy interests, but the privacy interests of all Class Members whose Personal Information was potentially exposed in the Data Incident. As a result, Plaintiff and the Class seek the same relief from the same injury and thus share an interest in obtaining a monetary recovery from USAA. *See Wal-Mart*, 396 F.3d at 110-11 (class representatives are adequate if their injuries encompass those of the class they seek to represent).

Moreover, there are no conflicts between Plaintiff and the Class. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *34 (E.D.N.Y. Oct. 15, 2014) ("Even if there was a conflict [relating to the assignment of recovery rights] (and there is not), it would under no conceivable circumstances be so 'fundamental'" to cause class representatives to be inadequate), *report and recommendation adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015). Because Plaintiff and Class Members both have a strong interest in obtaining the maximum

recovery possible for the harm caused by Defendant, Plaintiff's interests are inarguably aligned with the Class, as further demonstrated by his efforts in successfully prosecuting this Action.

### 2.    Class Counsel Have Adequately Represented the Class

The second Rule 23(e)(2)(A) factor requires the Court to assess the adequacy of Class Counsel. *Payment Card*, 330 F.R.D. at 30 (considering whether "plaintiff's attorneys are qualified, experienced and able to conduct the litigation"); *accord* FED. R. CIV. P. 23(g). Class Counsel Gainey McKenna & Egleston, Lowey Dannenberg, P.C., and Lynch Carpenter LLP have all collectively led the prosecution of this Action since the inception of their respectively filed cases, through consolidation, to achieve this excellent result for the Class. As further discussed herein, Class Counsel diligently worked together to advance the interests of Plaintiff and the Class, dedicating a total of 1,905.95 hours to the successful prosecution of this Action. *See* Final App. Decl. ¶ 12. Class Counsel each have decades of experience leading some of the most complex class actions, including data breach class actions, on behalf of consumers. Prelim. App. Decl. ¶ 30. Class Counsel's extensive data breach and class action litigation experience, along with their extensive efforts in achieving the Settlement, provides strong evidence that the Settlement is procedurally fair. *See* ECF Nos. 82-2–82-4 (firm résumés). *See also In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd sub nom. Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting the "extensive" experience of counsel in granting final approval of settlement); *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair).

### 3.    The Proposed Settlement Was Negotiated at Arm's Length

"Previously, settlements negotiated at arm's length enjoyed a presumption of fairness. However, the Second Circuit has since clarified that 'Rule 23(e)(2) prohibits courts from applying

a presumption of fairness to a settlement agreement based on its negotiation at arm's length.'" *Reyes*, 2024 WL 472841, at *3, n.3 (quoting *Moses*, 79 F.4th at 243). "Rule 23(e)(2)(B) requires a court to consider whether the proposed settlement was negotiated at arm's length" and "[t]he existence of arm's-length negotiations further counsels in favor of approving the settlement on a preliminary basis." *Reyes*, 2024 WL 472841, at *3. To further assess the integrity of the process, the key question is whether "plaintiffs' counsel is sufficiently well informed" to adequately advise and recommend the settlement to the class representatives and settlement class. *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 699 (S.D.N.Y. 2019).

The Settlement was reached after extensive arm's-length, non-collusive negotiations, including two mediation sessions conducted under the auspices of The Honorable Diane Welsh, U.S.M.J. (Ret.) of JAMS, a "respected mediator." *Barletti v. Connexin Software, Inc.*, 2024 U.S. Dist. LEXIS 43851, at *15 (E.D. Pa. Mar. 13, 2024);[8] Prelim. App. Decl., ¶¶ 20, 21, 28. During the mediation sessions, the Parties exchanged their legal theories, pieces of evidence, and challenged each other's case through the mediator. *See* Prelim. App. Decl., ¶¶ 21, 28. Although no resolution was reached at either of the mediations, the Parties continued their hard-fought negotiations through the mediator before ultimately reaching an agreement to settle the Action. *Id.* ¶¶ 28-29; *see also Belton v. GE Cap. Consumer Lending, Inc.*, 2022 WL 407404, at *4 (S.D.N.Y. Feb. 10, 2022) (negotiations that "included a mediation session with an experienced and highly

---

[8]     *See* https://www.jamsadr.com/welsh/.  Judge Welsh previously served as a U.S. Magistrate Judge in the U.S. District Court for the Eastern District of Pennsylvania from 1994 to 2005, and thereafter became a mediator with JAMS. As a former U.S. Magistrate Judge and current JAMS neutral, Judge Welsh has successfully resolved over 5,000 matters covering virtually every type of complex dispute. Most relevant here, Judge Welsh has substantial experience resolving class actions of all types, including those involving data breaches. *See In re Wawa, Inc. Data Sec. Litig.*, 2024 U.S. Dist. LEXIS 65200, at *19 (E.D. Pa. Apr. 9, 2024); *Barletti v. Connexin Software, Inc.*, 2024 U.S. Dist. LEXIS 43851, at *15 (E.D. Pa. Mar. 13, 2024); *Williams v. Bluestem Brands, Inc.*, 2019 U.S. Dist. LEXIS 56655, at *6 (M.D. Fla. Apr. 2, 2019); *see also* Final App. Decl., Ex. E.

regarded mediator … were thorough and hard fought, and free from any undue pressure or collusion").

At all times, Class Counsel had a sufficient basis on which to recommend that Plaintiff enter into the Settlement, which weighs in favor of finding that the Settlement is procedurally fair and should be approved. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts give "'great weight' … to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation"). Although Class Counsel believe that Plaintiff's claims have merit, they nevertheless recognize the expense and uncertainty of continued litigation against USAA (as detailed below), which maintains that it has strong defenses. In recommending that the Court approve this Settlement, Class Counsel have accounted for the defenses asserted by USAA, the developing caselaw surrounding data breaches and the DPPA, and the risks of further litigation.

Given Class Counsel's considerable prior experience in complex class action litigation involving data breach claims (among others), their knowledge of the strengths and weaknesses of Plaintiff's claims asserted in this Action, their assessment of the Settlement Class's likelihood of recovery following trial and appeal, and their experience negotiating with USAA, there is a strong basis to consider that the compromise reached here is fair and reasonable. *See In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1977), *aff'd* 117 F.3d 721 (2d Cir. 1997) ("*PaineWebber*") (observing that "great weight" is given to the advice of experienced counsel).

C.      **The Proposed Settlement Is Substantively Fair**

"Historically, [courts in this Circuit] evaluate substantive fairness [by] considering the nine *Grinnell* factors. Although the factors outlined in *Grinnell* and the revised Rule 23(e)(2) largely overlap, the rule now requires courts to expressly consider two core factors when reviewing the

substantive fairness of a settlement: the adequacy of relief provided to a class and the equitable treatment of class members." *Moses*, 79 F.4th at 244; *accord* FED. R. CIV. P. 23(e)(2)(C)-(D).

To assess the adequacy of relief, Rule 23(e)(2)(C) requires the Court to consider: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C).

This Settlement, encompassing the only cases filed following the Data Incident, is the only means of direct recovery for Settlement Class Members, provides substantial benefits to the Class, treats Class Members equitably, and is otherwise substantively fair, adequate, and reasonable.

### 1.     The Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) "implicates several *Grinnell* factors, including …: (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *Payment Card*, 330 F.R.D. at 36; *see also GSE Bonds*, 414 F. Supp. 3d at 693. In evaluating this factor, the Court's role is to "balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *In re GSE Bonds*, 414 F. Supp. 3d at 694; *see also Shapiro*, 2014 WL 1224666, at *10 (at final approval, the Court's role is not to "decide the merits of the case or resolve unsettled legal questions or to foresee with absolute certainty the outcome of the case" but rather to "assess the risks of litigation against the certainty of recovery under the proposed settlement."). The costs, risks, and delay of trial and appeal are significant in all data breach cases, and particularly so in this Action, thus supporting final approval.

10

While Plaintiff is confident in the merits of his claims and believes he would ultimately prevail at trial, the factual and legal issues in this Action are inherently complex and expensive to litigate. *See, e.g.*, *In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705, at *7 (E.D. Pa. Oct. 12, 2023) ("This is a complex class action lawsuit regarding damages from a data breach, an area of law that has not yet been fully developed"); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 663 (S.D.N.Y. 2015) ("The greater the complexity, expense and likely duration of the litigation, the stronger the basis for approving a settlement."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of non-recovery" due to "still-developing law," this factor weighed in favor of approval).

This is especially true in this case which involves complex legal and technical issues regarding USAA's online insurance quotation system. To begin with, Plaintiff would be required to obtain and prove the meaning and significance of technical evidence, third-party discovery,[9] deposition testimony, and other facts collected in discovery. Continued litigation would have also led to additional voluminous document productions, among other things. As such, the duration of the case would depend on the time Defendant (and any non-parties) are required to produce documents, and the time the Parties require to review said documents. Further discovery would also have likely led to discovery disputes and resulting motion practice which would have likely delayed the progression of the litigation.

USAA also served its own discovery demands, including requests for production and interrogatories, and used the information it developed to build on its defenses. Had discovery continued, USAA would have likely taken the deposition of Plaintiff which was noticed at the time

---

[9]    Continued litigation would have had Plaintiff serve further subpoenas on third parties identified during the course of Plaintiff's investigation, in addition to the subpoenas already served upon third-party LexisNexis Risk Solutions.

of Settlement, served additional discovery demands and subpoenas, and would have no doubt used the evidence collected through its discovery efforts to argue, among other things, that the Personal Information involved in the Data Incident did not qualify for protection under the DPPA.

Had this case continued, the cost of litigation would also have been significant for both sides due to the need for technical experts to interpret technical evidence and conduct forensic computer analysis, as well as damages experts to quantify the harms suffered by the Class. Had this case progressed towards class certification[10] and summary judgment, the Parties' experts would have continued to add to the cost and duration of the case, likely triggering a "battle of the experts."[11]  Expert discovery would likely have led to *Daubert* motion practice by both sides, further increasing the cost and risks of the litigation, and delaying any resolution. Given the complexities of this litigation and its focus on technical data security issues that would likely be unfamiliar to the average juror, this Action presents a significant level of risk and uncertainty from the outset.

---

[10]    The risk of maintaining a class through trial is another important consideration in evaluating the Settlement. *See In re GSE Bonds*, 414 F. Supp. 3d 686 at 694 (the risk of maintaining a class through trial "weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated"). Certifying a litigation class may raise complex legal and factual issues given the data breach involved. Because of this, there have only been a handful of data breach actions that have certified a litigation class. *See, e.g.*, *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. 2022), *vacated and remanded sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023), *and reinstated by In re Marriott Int'l Customer Data Sec. Breach Litig.*, 345 F.R.D. 137 (D. Md. 2023) (certifying Rule 23(b)(3) class); *In re Sonic Corp. Customer Data Breach Litig.*, 2020 WL 6701992, at *3-6 (N.D. Ohio Nov. 13, 2020) (certifying financial institution data breach class); *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 894 (11th Cir. 2023) (affirming, in part, decision to certify nationwide class of consumers in data breach action).

[11]    *See, e.g., In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018) (experts "tend[] to increase both the cost and duration of litigation"); *Balestra v. ATBCOIN LLC*, 2022 WL 950953, at *3 (S.D.N.Y. Mar. 29, 2022) (granting preliminary approval of class action settlement and finding the settlement amount within the range of approval considering the risks, including a costly and confusing "battle [] of the experts").

Furthermore, what constitutes "personal information[] from a motor vehicle record" under the DPPA remains a contested issue. *See* 18 U.S.C. § 2724(a). While Plaintiff believes that any Personal Information originally sourced from the DMV is protected under the DPPA, there are diverging views across the federal circuits. *Compare Whitaker v. Appriss, Inc.*, 2014 U.S. Dist. LEXIS 127213, at *4 (N.D. Ind. Sept. 11, 2014) (finding personal information sourced from the DMV to be protected "throughout its travels"), *with Garey v. Farrin*, 35 F.4th 917, 926-27 (4th Cir. 2022) (protecting "information from a motor vehicle record," not information that "can be linked back to (*i.e.* derived from) such a record."). Regardless, continued litigation would have involved extensive discovery efforts to trace the source of the data, as USAA would likely dispute its provenance, and require great cost and expense.

Plaintiff also faced risks in establishing damages. In particular, this Court limited Plaintiff's negligence claim "to the extent it is based on the monetary costs incurred to mitigate the harm caused by the data breach." *In re USAA Data Sec. Litig.*, 621 F. Supp. 3d 454, 470-71 (S.D.N.Y. 2022). While Plaintiff believes he would have been able to prove such damages, particularly as a result of the fraudulent unemployment claim filed in his name, damages would nevertheless be challenged by USAA at the class certification and summary judgment stages, as well as at trial.

In the face of these risks, this Settlement of $3,250,000 represents an excellent recovery for the Class and a reasonable hedge against the risks of pursuing the claims against USAA. Although Plaintiff and Class Counsel firmly believe that the asserted claims are meritorious, and they would zealously prosecute those claims to prevail at trial, Class Counsel's judgment is that there are substantial risks attendant with the continued prosecution of the claims. The existence of those risks fully supported entering into this Settlement now before this Court, and those same risks favor the Settlement's approval.

### 2.    The Effectiveness of the Distribution Plan

Under Rule 23(e)(2)(C)(ii), "[t]o warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate." *Payment Card*, 330 F.R.D. at 40. In addition, "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.*

The Settlement Fund will be distributed first by subtracting any Court-approved disbursements, including: (i) Taxes, (ii) Administration and Notice Costs; (iii) Attorneys' Fees and Expenses awarded by the Court; and (iv) any Service Award approved by the Court (*i.e.*, the "Net Settlement Fund"). SA ¶ 2.22. Thereafter, Settlement Payments will be automatically distributed to Authorized Claimants from the Net Settlement Fund on a *pro rata* basis. *Id.* ¶ 7.1.[12]

Allocating settlement proceeds on a *pro rata* basis has been approved as a fair, reasonable, and adequate method of allocating settlement funds by this Court and by courts in other class action settlements. *See, e.g.*, *Travelers*, No. 7:21-cv-10744-VB-VR, ECF No. 174 (Final Approval Order granting *pro rata* distribution); *Payment Card*, 330 F.R.D. at 47 (on preliminary approval, finding that a "*pro rata* distribution scheme is sufficiently equitable"); *Jenkins v. Nat'l Grid USA Serv. Co., Inc.*, 2022 WL 2301668, at *3 (E.D.N.Y. June 24, 2022) (approving a *pro rata* distribution of the settlement proceeds after reduction of the settlement costs). Further, **all** identifiable Class Members will *automatically* receive their share, without the need to submit a claim form or any other information, thus removing any barriers to recovery and supporting the effectiveness of the Distribution Plan. *See, e.g., Travelers*; *Reyes*, 2024 WL 472841, at *4-5 (on preliminary approval approving the *pro rata* distribution scheme as "equitable" where the "[d]istribution of funds will

---

[12]    The final amount for each Settlement Class member will be determined after the permitted disbursements are paid and the Settlement Administrator has processed all Settlement Payment Election Forms or otherwise located Class Members.

thus be automatic, with no need for additional effort on the part of Class members."). The Court should therefore approve the Distribution Plan for use in allocating proceeds from this Settlement.

> **3.    The Proposed Attorneys' Fees Indicate that the Class will Receive Substantial Relief from the Settlement**

Under Rule 23(e)(2)(C)(iii), the attorneys' fees and expenses that will be sought in connection with the Settlement are reasonable and further indicate that the Settlement Class will receive a substantial Net Settlement Fund. As also discussed in the accompanying Motion for Award of Attorneys' Fees, Expenses, and Service Award, the percentage of attorneys' fees requested (*i.e.*, thirty-three and one-third percent (33 1/3%)) of the Settlement Amount of $3,250,000 is reasonable in light of the negotiated Settlement because it reflects market rates and is within the range of attorneys' fee awards made in cases of similar or less complexity in this District.

Furthermore, the requested fees do not also unreasonably diminish the total amount of recovery made available to the Class nor does it unreasonably shortchange the Class. As this Court recently opined in *Travelers*, No. 7:21-cv-10744-VB-VR:

> The key thing that *Moses* is telling district courts to do is to determine whether the fee award in some way shortchanges the Class. And, also, the district court must ensure that attorneys do not receive unwarranted windfalls, because if that happened, then probably that would be at the expense of the Class, of the Class members, and if that happened, then arguably it would no longer be a reasonable settlement.
>
> The key word is fair, adequate and reasonable and it's not fair, adequate and reasonable if there is some sort of unreasonable diminishment. Those are my words. Those words don't appear in *Moses*, but I think that's the point.

Jan. 28, 2025, Final Approval Hr'g Tr. at 15:20–16:6. Unlike in *Moses*, the Settlement here involves an automatic cash payment, which is highly favorable to the Class. Even after the deduction of requested attorneys' fees and other litigation expenses, the Settlement Class shall still

15

receive approximately $82.96 – $92.09 per person. *See* Angeion Decl. ¶¶ 21-22.[13] This *net* recovery compares favorably on a per-person basis than the *gross* recoveries in similar data breach cases. *See Travelers*, Case No. 7:21-cv-10744-VB-VR, ECF Nos. 161, 174 (approving DPPA class action settlement where gross recovery was approximately $67.52 per person); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, 2022 WL 2063864, at *9 (S.D.N.Y. June 8, 2022) (approving settlement with tiered payment structure that included $30 payment, noting that some "data-breach cases have provided lower settlement payments to class members, with relief that includes a payment of $10 or merchant coupons"); *Barletti*, 2024 U.S. Dist. LEXIS 43851, at *5 (approving $4 million data breach settlement for 2.8 million class members, equaling a gross *pro rata* recovery of $1.43 per person); *In re Onix Grp., LLC Data Breach Litig.*, 2024 U.S. Dist. LEXIS 225686, at *7 (E.D. Pa. Dec. 13, 2024) (approving $1.25 million settlement for 308,942 class members, equaling a gross *pro rata* recovery of $4.05 per person); *In re Experian Data Breach Litig.*, 2019 U.S. Dist. LEXIS 81243, at *25 (C.D. Cal. May 10, 2019) ("The $22 million Settlement Fund results in a $1.47 payout per person, which compares favorably to other approved data breach settlements") (collecting data breach cases where the per person recovery ranged from $0.15 to $1.45); *In re MOVEit Customer Data Security Breach Litigation*, 1:23-md-03083-ADB, ECF No. 1409 (D. Mass. Mar. 4, 2025) (seeking final approval for $2.8 million settlement for 1.9 million individuals, equaling a gross *pro rata* recovery of $1.47 per person).

In addition, because the Settlement has been structured to ensure that <u>all</u> identifiable Class Members shall receive payment without needing to submit any additional information, this Settlement will not be one where just a few class members who submit a claim form will enjoy the

---

[13] The gross recovery is approximately $143.51 per class member which also compares favorably to the gross recovery amounts obtained in similar settlements.

benefits of the Settlement, nor is it a case where there will be a vast number of fraudulent claims which could otherwise diminish the relief for genuine class members.

Lastly, there is no windfall to Class Counsel as Class Counsel expended significant time into this Action, resulting in a negative lodestar multiplier. Final App. Decl. ¶ 13. In addition to the request for attorneys' fees, Class Counsel seek $25,772.69 in reasonably incurred litigation expenses, of the type typically incurred in this type of litigation. *Id.* ¶¶ 15-16; *see Meredith Corp.*, 87 F. Supp. 3d at 671 (reasonably incurred expenses may be reimbursed from the settlement fund).

As such, in light of the per-person recovery achieved in this case (especially considering the real risk of no recovery) and the structure of the Distribution Plan, the requested fee award will not "shortchange[] the class," and in "balanc[ing] the proposed award of attorneys' fees vis-à-vis the relief provided for the class," it is clear that the Settlement and requested fee here is eminently fair, adequate, and reasonable. *Moses*, 79 F.4th at 244.

### 4.    There Are No Further Agreements to be Identified

Rule 23(e)(3) requires that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal." Here, the Settlement Agreement specifically identifies the *In Camera* Supplement, which permits USAA to terminate the Settlement under certain conditions before final approval. SA ¶¶ 2.20, 6.2; *accord* FED. R. CIV. P. 23(e)(2)(B)(iv). This type of agreement is standard in complex class action settlements and does not impact the fairness of the Settlement. The Court previously approved the *In Camera* Supplement and allowed it to be filed under seal. *See* ECF Nos. 85-87. Beyond this, there are no further agreements to be identified under this factor.

17

**5.        The Settlement Treats Class Members Equitably**

The Settlement also "treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(D). The Distribution Plan provides for a *pro rata* distribution of the Net Settlement Fund, a method this Court has already found to be equitable in other cases. *See, e.g.*, *Travelers*, No. 7:21-cv-10744-VB-VR, ECF No. 174 (identical distribution here); *Payment Card*, 330 F.R.D. at 47 (finding that "pro rata distribution scheme is sufficiently equitable"); *see also Sonterra Capital Master Fund, Ltd. v. Barclays Bank PLC*, 2023 WL 3749996, at *4 (S.D.N.Y. June 1, 2023) (finding that "the *pro rata* distribution of the Settlement Fund … [is] sufficient to show that the Settlement Class is treated equitably."). The Settlement does not favor or disfavor the Plaintiff or any Settlement Class Member; nor does it discriminate against, create any limitations, or exclude from payments any persons or groups within the Settlement Class. All Settlement Class Members would release USAA with respect to claims based on the same factual predicate of this Action. SA ¶¶ 2.34; 12.1-12.4. The proposed Class Notice provides information on how to opt out of the Settlement; absent opting out, each Class Member will be bound by the release. SA ¶ 14.6.

**D. The Remaining *Grinnell* Factors Favor Final Approval**

In addition to the Rule 23(e) factors, Courts in this Circuit consider the nine *Grinnell* factors in deciding whether a settlement is substantively fair, reasonable, and adequate:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

18

*Grinnell*, 495 F.2d at 463. In 2023, the Second Circuit made clear that "the revised Rule 23(e)(2) does not displace our traditional *Grinnell* factors, which remain a useful framework for considering the substantive fairness of a settlement." *Moses*, 79 F.4th at 243; *see also In re GSE Bonds*, 414 F. Supp. 3d at 692 ("The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these '*Grinnell*' factors."); *Payment Card*, 330 F.R.D. at 29 ("Indeed, there is significant overlap between the *Grinnell* factors and the Rule 23(e)(2)(C-D) factors …"). The *Grinnell* factors not included in Rule 23(e)(2) also favor final approval here. These factors include: "(2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; … (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

### 1.    The Reaction of the Settlement Class to the Settlement

"A positive reaction of the class to the proposed settlement favors its approval by the Court." *Meredith Corp.*, 87 F. Supp. 3d at 663. The class's reaction to a proposed settlement is an important factor to be weighed in considering its fairness and adequacy. *See Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002) ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy."). As detailed above, Notice has been mailed directly to 22,641 Class Members, and Class Members have also been given notice through the Settlement Website and news reports regarding the Settlement.[14] This motion is being filed before the deadline to object or opt-out of

---

[14]    Several national (and international) news outlets including *Yahoo* and *The Economic Times* have reported the Settlement, prompting an influx of inquiries from potential Class Members.

the Settlement, as required by the Preliminary Approval Order and Amended Preliminary Approval Order. However, there have been no objections to the Settlement and just one (1) request for exclusion to date. Given the present lack of objections and only one (1) opt-out to date, the reaction of the class provides a strong indication of support for the Settlement. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 432-33 (S.D.N.Y. 2014) (citing *Wright v. Stern*, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008) (noting "the fact that the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate")). Also, to date, 2,144 Settlement Payment Election Forms have been submitted to the Settlement Administrator, and more are anticipated to be filed by the deadline. *See* Angeion Decl. ¶ 13.[15]

Further, Plaintiff, who has been directly involved in overseeing the litigation, favors the Settlement. Throughout, Plaintiff has been directly engaged in the Action, including participating in litigation and settlement strategy, and reviewing various pleadings and briefs. *See* Final App. Decl., Ex. D (Declaration of Vincent Dolan in Support of Plaintiff's Motion for Attorneys' Fees, Expenses, and Service Award) at ¶ 9, filed herewith. The Settlement Administrator will also submit a declaration updating the Court on the responses (if any) from the Settlement Class following the April 7, 2025 Settlement Payment Election, Objection, and Exclusion Deadlines. Amended Preliminary Order ¶ 1. Class Counsel will also file a reply addressing any objections or lack thereof. *Id.* As in *Travelers*, this declaration will also include the final cost of administration for the Settlement needed to complete the analysis above.

---

[15]    To be sure, this is not a traditional "claims deadline," since under the Settlement all Class Members are entitled to receive payment, not just those who submit the Settlement Payment Election form, rather it is a deadline to enable Class Members to select *how* they would like to receive their payment—through several electronic payment options or via paper check. The default method will be by paper check if no form is submitted.

## 2.    The Stage of the Proceedings

Examining the stage of the proceedings at which the Settlement occurs is intended to assess "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006); *see also Global Crossing*, 225 F.R.D. at 458 ("[T]he question is whether the parties had adequate information about their claims."). This factor does not require extensive formal discovery, or indeed any formal discovery at all, "as long as '[counsel] have engaged in sufficient investigation … to enable the Court to 'intelligently make … an appraisal' of the settlement." *AOL*, 2006 WL 903236, at *10.

In this case, there is no doubt that Plaintiff and Class Counsel had sufficient information with which to determine that the Settlement was fair, reasonable, and adequate. This litigation has been active for over three full years, during which time Plaintiff and Class Counsel conducted extensive factual and legal research; engaged in party and third-party discovery; held numerous meet-and-confers with USAA regarding discovery; opposed and partially defeated a motion to dismiss; exchanged information during two mediation sessions; among other work. *See generally* Prelim. App. Decl. ¶¶ 10-29. Moreover, Class Counsel brought to bear the knowledge and experience gained from litigating other similar data breach cases. The information gathered during this process greatly informed Plaintiff of the advantages and disadvantages of entering into the Settlement.

## 3.    The Ability of USAA to Withstand Greater Judgment

While Defendant could withstand a greater judgment, "[a] defendant is not required to 'empty its coffers' before a settlement can be found adequate." *Meredith Corp.*, 87 F. Supp. 3d at 665. That USAA could have sustained a greater judgment is not determinative of the Settlement's

21

substantive fairness. *See Global Crossing*, 225 F.R.D. at 460 ("[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate"). Additionally, given the risks faced in establishing liability in this Action, the fact that data breach litigation is a developing area of law, and that many data breach cases settle for a few dollars per-person (as discussed above), the fact USAA could withstand a greater judgment should not detract from the significant benefits achieved here.

### 4.    The Reasonableness of the Settlement Amount in Light of the Best Possible Recovery and the Risks of Litigation

Finally, the eighth and ninth *Grinnell* factors also weigh in favor of approving the Settlement. As the Second Circuit has explained, there is "a range of reasonableness with respect to a settlement" that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972). "The adequacy of the amount achieved in settlement is not to be judged 'in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case.'" *Meredith Corp.*, 87 F. Supp. 3d at 665-66.

The Settlement provides "the immediacy and certainty of a recovery, against the continuing risks of litigation." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 139 (S.D.N.Y. 2010). It exchanges extensive prosecution costs and a lengthy litigation timeline with a real recovery. While the class wide damages could be substantial if Plaintiff successfully proved his DPPA claim and upheld it on appeal (potentially up to $2,500 per class member based on the statutory damages), achieving that level of recovery was always going to be a significant challenge, given the significant risks associated with certifying a litigation class, establishing liability, proving damages, and in light of the developing jurisprudence involving data privacy and DPPA laws, as discussed *supra*. For this

reason, many DPPA cases settle for injunctive relief alone with *no* monetary recovery. *See, e.g.*, *Gaston v. LexisNexis Risk Solutions*, 2021 WL 2077812, at \*6 (W.D.N.C. May 24, 2021) (settlement for injunctive relief only reached after court granted plaintiffs' summary judgment motion for declaratory and injunctive relief, but denied claim for liquidated damages under DPPA); *Roberts v. Source for Pub. Data LP*, 2010 WL 4008347 (W.D. Mo. Oct. 12, 2010) (settled for injunctive relief and attorneys' fees only); *Fresco v. Auto. Directions Inc.*, 2009 U.S. Dist. LEXIS 125233 (S.D. Fla. Jan. 16, 2009) (same); *Fresco v. R.L. Polk & Co.*, 2009 U.S. Dist. LEXIS 154273 (S.D. Fla. Jun. 15, 2009) (same).[16]

In contrast, this Settlement will provide Class Members a gross recovery of approximately $143.51, and an estimated net recovery after deduction of all fees and expenses between $82.96 – $92.09. *See* Angeion Decl. ¶¶ 21-22. While the monetary compensation USAA provided under the Settlement is a percentage of the total maximum amount of damages, its value on a per person basis exceeds typical recoveries for this type of claim—including what counsel obtained in the *Travelers* settlement this Court previously approved. *See Travelers*, No. 7:21-cv-10744-VB-VR, ECF Nos. 161, 173, 174 (estimating gross recovery at $67.52; net recovery at $45.23 – 46.48).

Class Counsel therefore recommends the Settlement as it provides immediate compensation to the Class. In light of the risks of continued litigation, Class Counsel's measured

---

[16]    Non-DPPA data breach settlements also typically settle for a few dollars per person. *See* § III(C)(3), *supra*; *see also In re Planned Parenthood L.A. Data Incident Litig.*, 2024 Cal. Super. LEXIS 2, at \*29 (Cal. Super. L.A. Cnty. Jan. 2, 2024) (finding settlement providing "$6.61 per class member," or "0.70-1.08% of Defendant's maximum exposure" to be "within the ballpark of reasonableness."); *Grinnell*, 495 F.2d at 455, n.2 ("satisfactory settlement" could be "a thousandth part of a single percent of the potential recovery."); *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 270 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."); *Global Crossing*, 225 F.R.D at 461 ("[T]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved").

judgment is that the total consideration provided by the Settlement is fair, reasonable, and adequate, thus warranting final approval.

## IV.   THE PROPOSED SETTLEMENT CLASS SATISFIES ALL REQUIREMENTS OF RULE 23 AND SHOULD BE FINALLY CERTIFIED

For the reasons detailed in the Preliminary Approval Motion (ECF Nos. 80-85) and as held in the Court's Preliminary Approval Order and Amended Preliminary Approval Order (ECF Nos. 89, 92), the Settlement Class satisfies all requirements of Rules 23(a) and 23(b)(3).[17] To summarize:

**Numerosity.** There are approximately 22,646 geographically dispersed persons that fall within the Settlement Class definition. *See* Prelim. App. Decl. ¶ 32; *see also* Angeion Decl. ¶ 5.

**Commonality.** Commonality is easily satisfied here where there are numerous common questions of law and fact and where Plaintiff and Class Members will have to answer the same liability and impact questions through the same body of common class-wide proof.

**Typicality.** Plaintiff's claims are typical of those of the entire Settlement Class because the Plaintiff's and Class Members' claims all arise from the same course of conduct involving USAA's alleged data security failures.

**Adequacy.** Plaintiff is an adequate representative as described in Section III(B)(1), above. Further, Class Counsel are highly experienced in data breach and other complex class actions and are adequate class counsel. *See* Section III(B)(2), *supra*.

**Predominance and Superiority.** Lastly, common questions predominate, and a class action is the superior method for resolving this case. Here, if the claims against USAA were not settled,

---

[17]    The Settlement Class preliminarily approved by this Court was "All individuals of the United States whose Personal Information was accessed, stolen, or compromised as a result of the Data Incident, as reflected on the Class List." Preliminary Approval Order at ¶ 4.

24

Plaintiff and all Class Members would have to answer the same questions regarding whether USAA failed to adopt and maintain reasonable security measures to protect Personal Information, promptly detect the Data Incident, remedy and mitigate the effects of the Data Incident, and provide timely notification to affected persons. Class Members would need to establish the same facts for liability using similar proof and develop a common damages methodology to quantify the impact of the same harm. As these common questions are central and determine the liability and damages for all Class Members, such issues predominate over individualized issues. A class action is the superior vehicle in this case because Class Members have no substantial interest in proceeding individually given the complexity and expense of the litigation as compared to the value of each individual's likely recovery.

## V. THE NOTICE PLAN SATISFIED DUE PROCESS

Rule 23(e)(1) provides that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the [settlement]." FED. R. CIV. P. 23(e)(1)(B). The standard for the adequacy of notice to the class is reasonableness. *See* FED. R. CIV. P. 23(c)(2)(B). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114.

The Notice plan has been fully implemented by the Settlement Administrator. *See* Angeion Decl. ¶¶ 6-11. The Notice Plan, which includes mailed notice, satisfies due process.[18] The mailed

---

[18] The Supreme Court has consistently found that mailed notice satisfies the requirements of due process. *See, e.g.*, *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 319 (1950); *Travelers*, No. 7:21-cv-10744-VB-VR, ECF No. 174 at ¶ 7 (Final Approval Order approving similar mailed notice);

notice is written in clear and concise language, and reasonably conveyed the necessary information to the average class member. *See Wal-Mart*, 396 F.3d at 114. Class Members have been advised on the nature of the Action, including the relevant claims, issues, and defenses. *See* Angeion Decl., Ex. A. By April 7, 2025, Class Members will have been afforded a full and fair opportunity to consider the proposed Settlement, exclude themselves from the Settlement, and respond and/or appear in Court. The Court should therefore find that the Notice plan was reasonable and satisfied due process.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court finally approve the Settlement, finally certify the Settlement Class, and enter the proposed Final Approval Order and Judgment dismissing with prejudice the claims against USAA.

Dated: March 24, 2025
New York, New York

Respectfully Submitted,

**LOWEY DANNENBERG, P.C.**

By: */s/ Christian Levis*
Christian Levis
Amanda G. Fiorilla
Anthony M. Christina
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
clevis@lowey.com
afiorilla@lowey.com
achristina@lowey.com

**LYNCH CARPENTER LLP**

By: */s/ Nicholas A. Colella*
Gary F. Lynch
Nicholas A. Colella
1133 Penn Ave., Floor 5

**GAINEY McKENNA & EGLESTON**

By: */s/ Thomas J. McKenna*
Thomas J. McKenna
Gregory M. Egleston
Christopher Brain
260 Madison Avenue, 22nd Floor
New York, NY 10016
Tel: (212) 983-1300
tjmckenna@gme-law.com
gegleston@gme-law.com
cbrain@gme-law.com

26

Pittsburgh, PA 15222
gary@lcllp.com
nickc@lcllp.com

*Class Counsel for Plaintiff Vincent Dolan*

27

**CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(c)**

I hereby certify that the document complies with the word-count limitations imposed by Local Civil Rule 7.1(c). The foregoing document contains 8,517 words, exclusive of the caption, table of contents, table of authorities, signature blocks, and any required certificates.

*/s/ Thomas J. McKenna*
Thomas J. McKenna

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2025, I caused a true and correct copy of the foregoing to be served on counsel of record by electronically filing it with the Clerk of the Court using the ECF system, which will send notification of such filing to the registered participants and via email to counsel for Defendant United Services Automobile Association.

*/s/ Thomas J. McKenna*
Thomas J. McKenna